## No. 1820.
### Second Circuit Appeal.

_____

### JOHN F. ADAMSON v. JIMMIE BUSBEY.

_____

(October 31, 1924, Opinion and Decree.)
(Jan. 12, 1925, Rehearing Granted.)
(March 17, 1925, Opinion and Decree on Rehearing)

_____

(*Syllabus by the Editor.*)

1. Louisiana  Digest—Estoppel—Par.  22, 30, 31.

Where plaintiff, acting as secretary-treasurer for an oil company permitted a vendee of the company to take possession of a drilling rig (complete) with the breakout tongs and swivel attached, and he sat silently by and let his vendee sell it with the same accessories attached, to defendant, the plaintiff, acting as an individual, is estopped from claiming that the breakout tongs and swivel attached to this rig belonged to another rig which he afterwards purchased from a third party.

2. Louisiana Digest—Sales—Par. 211.

The defendant purchased the rig in good faith and when plaintiff purchased the other drilling rig he received only such title as his vendor had, and consequently could not claim the breakout tongs and swivel which had been transferred to defendant's rig long before his vendor purchased the rig in question, there being no subrogation.

Appeal from the First District Court, Parish of Caddo, T. F. Bell, Judge.

This is a suit to recover the cost of a breakout tongs and swivel alleged to have been sold with a drilling rig. There was judgment for plaintiff and defendant appealed.  Judgment reversed.

Dickson & Denny of Shreveport, attorneys for plaintiff and appellee.

Wilkinson, Lewis & Wilkinson of Shreveport attorneys for defendant and appellant.

CROW, J. In the autumn of 1921, the Louisiana Producers Oil Company was carrying on drilling operations for oil and gas in Caddo Parish with what is known as a National drilling rig and outfit, and in DeSoto Parish with what is known as a Lucy drilling rig and outfit. There are used in connection with drilling operations, such as were being carried on by the said company, certain implements, commonly called swivel and break-out tongs. The said Company, it appears, was using with the National drilling rig in Caddo Parish, a pair of Dunns breakout tongs and a swivel. At the same time, it was using with its Lucy drilling outfit in DeSoto Parish, Lucy break-out tongs and a swivel.

It appears that during the said operations, the break-out tongs and swivel in use with the Lucy drilling outfit in DeSoto Parish became defective, and that the Dunns break-out tongs and swivel used with the National drilling rig in Caddo Parish were, by said Company, transferred to the Lucy drilling rig in DeSoto Parish, and used on and with the latter rig. According to the record, the said break-out tongs and swivel could, with equal facility, be used on either the National rig or the Lucy rig.

On October 11th, 1921, while the said Dunns break-out tongs and swivel were attached to and used on the Lucy drilling outfit in DeSoto Parish, the Louisiana Producers Oil Company, acting by and through its Secretary-Treasurer, John P. Adamson, the plaintiff in this suit sold and delivered to one W. L. Miller, the said Lucy drilling rig, complete, "with all parts and connections necessary and pertaining thereto, including all tools," etc., "in DeSoto Parish near Sodus, Louisiana." The foregoing quotation is an excerpt from the act of sale evidencing the transaction between the said Company and the said Miller which act

was passed before James A. Denny, Notary Public, on the date aforesaid. There appear no reservations or exceptions in said act of sale.

On October 26th, 1921, the said W. L. Miller, by notarial act passed before Eva L. Duringer, Notary Public, sold and delivered to defendant, Jimmie Busbey, without reservations or exceptions, the same complete Lucy drilling rig, with all parts, connections, tools, etc.; situated in DeSoto Parish, and which had been acquired by said Miller from the Louisiana Producers Oil Co., as foresaid.

At the time of the two aforesaid sales, and all during the interim between the dates of said sales, and even later on, the said Dunns break-out tongs and swivel, which had been transferred from the National rig in Caddo Parish and attached to and used on the Lucy drilling rig in DeSoto Parish, were still attached to and used on said latter rig. Those "necessary tools" or implements were seemingly never dissevered or detached from the Lucy drilling rig during any of the time above mentioned.

On November 12th, 1921, the Louisiana Producers Oil Co., by act of compromise, or transaction, sold, assigned and delivered to one H. R. Smith, the said National drilling rig (complete) situated in Caddo Parish. There were no reservations or exceptions stipulated in said act; neither was there any mention made therein, specifically or by description, of the Dunns break-out tongs and swivel, which were then on and attached to the Lucy rig in DeSoto Parish.

On May 22nd, 1922, the said H. R. Smith, by act of sale passed before J. E. Croom, Deputy Clerk and Ex-Officio Notary Public, sold and delivered to the plaintiff, John P. Adamson, the said National drilling rig (complete) which he (Smith)

had acquired from the Louisiana Producers Oil Co., of which plaintiff had been Secretary-Treasurer till November 1st 1921. No reservations or exceptions were expressed in said act of sale; nor was any reference made therein ·to the break-out tongs· and swivel, or any mention made of those implements.

On May 22nd, 1922, John P. Adamson, the plaintiff herein instituted the present suit to recover of defendant, Jimmie Busbey, the sum of $611.50, which he alleged was the value of the said Dunns break-out tongs and swivel, which, he alleged, had been .taken possession of by defendant without right or title thereto. He further alleged that defendant converted said property to his own use and had refused to deliver possession thereof to plaintiff. The further allegation was made by plaintiff that it · was impossible for him to trace said property, and that he had an opportunity to sell the rig complete, but that it was necessary to have break-out tongs and swivel before the rig would be complete.

Defendant answered and admitted that he· had taken possession of ·the property in contest, but averred that he had acquired same as a part of the sale of the Lucy rig (complete), and that said break-out tongs and swivel had been attached to said latter rig long before plaintiff acquired the said National rig on January 7th, 1922, of which rig the said break-out tongs and swivel then formed no part.

The answer also contained the averment that,· since the said implements were not included in the sale and purchase of the · National drilling rig, and since they were taken possession of by defendant and his vendor long before the purchase. by plaintiff of the National rig, no right of action was transferred to plaintiff by his vendor to recover same. He also alleged that he was a purchaser of the break-out tongs and swivel, as a part of the Lucy rig (complete), in good faith, for a valuable consideration, without notice of any claim of said plaintiff.

Defendant also filed a plea of estoppel in which he averred that because plaintiff, as an officer of the Louisiana Producers Oil Co., had sold said property to W. L. Miller, on August (evidently meaning October) 11th, 1921, or permitted said Miller to take possession thereof and assume to be the owner of same, and defendant relying on the ownership of said Miller to said property, purchased same in good faith and without any notice of the claim of plaintiff, he (plaintiff) was estopped and debarred from disputing defendant's ownership of the property in question.

The case was tried in the District Court, and there was judgment in favor of plaintiff and against defendant for. $500.00, with legal interest from judicial demand, and the latter has appealed to this Court.

## OPINION

Plaintiff bases his cause of action on the hypothesis that the break-out tongs and swivel were necessary parts of a complete rig and that, having purchased a complete National rig from H. R. ˙Smith on January 7th 1922, and that the implements the· value of which is sued for in this action having once been connected with and attached to said National rig, he is entitled to recover of the present possessor the value of the break-out tongs and swivel, as for conversion thereof. He seems to overlook entirely the fact that he has his action against his vendor, Smith, in warranty, if the rig was not delivered to him, complete.

By the same token by which plaintiff claims he is entitled to recover of defendant the value of the implements in question, namely that they were parts of a complete rig, defendant can justly and rightly claim title to said implements; for

there is no question but that the implements, the title to which is in dispute, were attached to and formed a part of the Lucy rig (complete) when plaintiff, for the Louisiana Producers Oil Co., sold the latter rig to Miller, and when it was later sold by Miller to defendant. The nature and character of plaintiff's cause of action, based as it is on the above hypothesis, is a practical admission that defendant has title to the property in question, in view of the uncontradicted facts in evidence, namely, that the break-out tongs and swivel were attached to and used on the Lucy drilling rig when Miller purchased the rig (complete) from the Louisiana Producers Oil Company, acting by and through plaintiff as Secretary-Treasurer, and when Miller sold same to defendant, and that no mention or exception in the act of sale was made of the break-out tongs and swivel. In fact, in view of the relative dates of the several sales mentioned, plaintiff, by inference and implication, concedes defendant a greater right to the property than he himself has. This is true for at least two reasons; (1) Because defendant was a purchaser of the implements in good faith and without any notice that anyone claimed the property in dispute other than the one from whom he purchased it, whereas plaintiff, evidently, knew defendant or some one else was claiming title to the property, for he himself, acting as Secretary-Treasurer of the Louisiana Producers Oil Co., sold the Lucy rig (complete) to defendant's vendor when the said break-out tongs and swivel were attached to and used on said rig; and, (2) because plaintiff's conduct operated as a sort of equitable estoppel to his claim for the said implements from an innocent purchaser without notice, whereas there was nothing in the conduct of defendant to equitably estop him from asserting title to the property in dispute.

Plaintiff, acting as Secretary-Treasurer for the Louisiana Producers Oil Co., at least permitted his vendee, Miller, to take possession of the Lucy rig (complete) with the break-out tongs and swivel attached, and he sat silently by and let Miller later sell it, with the same accessories attached, to defendant, and then, after losing his job, or severing his connection as Secretary-Treasurer with the Louisiana Producers Oil Co., purchased the National rig situated in Caddo Parish, and proceded to enter suit against defendant for the value of the break-out tongs and swivel, which had been transferred by said Oil Company, while he was its active Secretary-Treasurer, from the National rig in Caddo Parish, and placed on and used in connection with the Lucy rig in DeSoto Parish, which plaintiff assumed to be in active charge and control of, as evidenced by the sale thereof to Miller, for the said Oil Company.

Another insuperable barrier to plaintiff's right to recover from defendant the value of the break-out tongs and swivel for alleged conversion thereof, is the fact that the alleged conversion, if it took place at all, was committed long before plaintiff purchased the National rig in Caddo Parish, to-wit: On October 11th, 1921, or, at the latest, on October 26th, 1921. Plaintiff purchased the National rig on January 7th, 1922, some three months after Miller had bought the Lucy rig in DeSoto Parish, with the break-out tongs and swivel attached to said latter rig. There was no explanation made at the time of the sale by the seller to Miller that the break-out tongs and swivel on the Lucy rig were not included in the sale. The presumption is, therefore, that they were included in the sale; for, says the Civil Code, Art. 2474: "The seller is bound to explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is construed against him."

Again, break-out tongs and swivel were shown to be necessary parts and accessories of a complete rig. It is, therefore, apparent that, unless the seller to Miller explained to the latter clearly at the time of the sale to him of the Lucy rig, that the break-out tongs and swivel attached to and then being used on said rig, were excluded from the sale (the seller being then the owner of the entire property) Miller got at least a colorable, if not an indefeasable, title to the break-out tongs and swivel, which he later conveyed to defendant, who was acting in good faith and without any notice of any adverse claims to any part of the property.

Furthermore, plaintiff, when he purchased the National rig from H. R. Smith, on January 7th, 1922, got only such title to the said rig as his vendor then had. If there was a conversion of the property in dispute, it occurred several months before plaintiff bought the National rig, situated in Caddo Parish. When the alleged conversion took place, the Louisiana Producers Oil Co. had its right of action, if any there was, to recover the said break-out tongs and swivel, or their value, for conversion thereof. That Company sold the National rig in Caddo Parish to H. R. Smith, without any subrogation to H. R. Smith of its right of action for the said tongs and swivel or their value for conversion. Neither was there any subrogation of such right of action expressed in the sale from H. R. Smith to plaintiff. It is obvious, therefore, that there was no such right transferred to Smith or by Smith to plaintiff. Clearly, no legal subrogation under the provisions of Art. 2161 of the Civil Code relating to subrogation by operation of law took place. On the other hand, there was no conventional or express subrogation stipulated in either of the sales of the National rig. We, therefore, are of the opinion that plaintiff had no right of ac-

tion to sue defendant for the recovery of the break-out tongs and swivel, or for their value as for conversion. (Scovell vs. St. Louis S. W. Ry. Co., 117 La. 459, 41 South. 723.) It must be remembered that the National rig was situated wholy in Caddo parish, while the Lucy rig was situated wholly in DeSoto parish, as shown by the several acts of sale herein referred to. If, therefore, it is claimed by plaintiff that he bought the break-out tongs and swivel as a part of the National rig and that he would have the right to sue for the possession or conversion thereof, the answer to that contention is that the property in dispute was situated in DeSoto Parish long before plaintiff purchased the National rig in Caddo Parish, and at the time of his said purchase, and that no mention whatever thereof was made in the acts of sale from the Louisiana Producers Oil Company to Smith, and from Smith to plaintiff.

There is also a great deal of force in the plea of estoppel filed by defendant. Although plaintiff was not the same being or entity as the Louisiana Producers Oil Company when he, for said Company, consummated the sale of the Lucy rig (complete) to Miller, he was the apparent managing officer of that Company, and assumed to sell the property of the concern. No point is made that plaintiff never had authority to make the sale to Miller. Plaintiff signed the act of sale, as Secretary-Treasurer of the Louisiana Producers Oil Co., and stipulated in said act of sale that he was duly authorized by a resolution of the Board of Directors of the said Company to make the sale.

The following, taken from 10 R. C. L., p. 777, seems entirely applicable here:

"Mere possession and control of personal property is not sufficient to estop the real owner from asserting his title against a

person who has dealt with the one in possession on the faith of his apparent ownership. But an estoppel will arise against the real owner where he clothes the person assuming to dispose of the property with the apparent title to it, and when the person setting up the estoppel acts and parts with the value or extends credit on the faith of such apparent ownership. Thus, where the owner of a wagon allowed another person to paint his name and business on it, the true owner has held estopped as against a purchaser from the apparent owner. Similarly, an estoppel was declared where the owner of cattle branded them with another's brand and sent them to such other person to be pastured for hire, and the bailee mortgaged them."

Another excerpt taken from 24 R. C. L., p. 378, Sec. 665, is pertinent to this case, viz:

"If the owner of chattels intrusts another with the indicia of ownership, he may be estopped to assert his ownership as against a bona fide purchaser for value. The general rule, applicable to property other than negotiable securities, that the seller can convey no greater right or title than he has, is only predicable of a simple transfer from one person to another where no other element intervenes. It does not interfere with the well established principle that where the true owner holds out another, or allows him to appear, as the owner of or as having full power of disposition over the property, and innocent third persons are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the person with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing as against them, the existence of the title or power which, through negligence or mistaken confidence,

he caused or allowed to appear to be vested in the person making the transfer."

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the District Court herein rendered be, and it is avoided, reversed and anulled, and it is further ordered, adjudged and decreed that plaintiff's demands be, and they are, rejected at his costs in both courts.

---

ON REHEARING.

REYNOLDS, J. A rehearing was granted in this case for the reason that all of the evidence in the case, especially the evidence of Mr. Lee Howell, had not been included in the original transcript.

This missing evidence is now before the court and we have carefully read and weighed the same in connection with the other evidence in the case.

The point upon which Mr. Lee Howell testified, is as to what was said by Mr. J. P. Adamson to W. L. Miller and Jimmie Busbey relative to a sale previously made by the Louisiana Producers Oil Company through J. P. Adamson, secretary-treasurer, to W. L. Miller.

On this point Mr. Lee Howell testified in answer to interrogatories.

"I came into the office of the Louisiana Producers Oil Co., in the Youree Hotel Annex near the close of this conversation. I did not hear all but just a few final remarks.

"Mr. Adamson said in substance—'Now let us see that we all understand the deal fully—You (addressing Mr. Miller and Mr. Busbey) that the National Swivel, a set of tongs and certain pipe does is not included in this sale, and does not belong with the Lucy rig—both Mr. Miller and Mr. Busbey agreed that they understood that feature."

On this same point Mr. W. L. Miller also testified as a witness for plaintiff (evidence 1-2-3.)

"Q. You were present when a conversation was had where Mr. Adamson stated that the breakout tongs and this swivel didn't go into the deal—did you hear him say words to that effect?

"A. I was there when the—the night we gave Mr. Adamson a note.

"Q. That was the night?

"A. Yes, sir.

"Q. Same night?

"A. Well, now, let me tell that like I remember it. That is the only way I know how to tell it. Mr. Adamson taken this note. He had my note for three thousand dollars and Mr. Busbey give him his note for three thousand and I swapped my note to Mr. Adamson, Mr. Busbey's note for my note and Mr. Adamson accepted it and give me my note and I tore it up and—and then, Mr. Adamson said, 'Does Mr. Busbey understand what goes? and I said, Yes. I guess he do—I went down with him and he looked at it; and that is as near as I can remember him saying anything about any tongs. I don't think he mentioned a swivel that night. If he did, I don't remember it.

"Q. Did you hear Mr. Adamson say to you and Mr. Busbey words to that effect—'Let us see that we all understand the deal fully'?

"A. What is that?

"Q. 'Now let us see that we all understand the deal fully that the National swivel and a set of Dunn breakout tongs at a certain price is not included in this sale and does not belong to the Lucy rig?"

"A. No, sir, I don't remember that.

"Q. But how—

"A. I remember these words when Mr. Adamson—he didn't want Mr. Howell or anybody to know that we had made this deal and he said, 'Does Mr. Busbey understand what goes down there and what don't?' I think that is the exact words he used, because if Mr. Adamson remembers, he said he didn't want Mr. Howell to know we had closed this up.

"Q. Mr. Howell had come in there?

"A. Mr. Howell was in the office sitting down when I went in there. Mr. Adamson met me up about half way to his desk and shook hands and I said, I have closed up that deal, and he said, 'All right—all right, and he didn't want Mr. Howell to know what it was; and that is the conversation that went on as near as I can repeat it off hand."

This testimony of Mr. Lee Howell and Mr. W. L. Miller, both witnesses for the plaintiff, is conflicting and does not refer to the sale by the Louisiana Producers Oil Company to W. L. Miller which is the pivotal point in this case, since Mr. W. L. Miller transferred to Mr. Jimmie Busbey, the defendant, all of the property purchased by him from the Louisiana Producers Oil Company; the description of which in the sale from the Louisiana Producers Oil Company to Miller and from Miller to Mr. Jimmie Busbey being in identical language.

The testimony of Mr. Lee Howell, we think, if it had been in the original transcript would not have changed the opinion heretofore rendered by this court in this case.

It is therefore ordered, adjudged and decreed that the judgment and decree of this court heretofore rendered by Judge J. B. Crow as a member of this court be reinstated and the same is made the judgment and decree of this court.